# N. Y. SUPERIOR COURT.

RUSSELL D. MINER, plaintiff and appellant agt. ANNIE M. BEEKMAN, HUGH CROMBIE, and others, defendants and respondents.

An action for the redemption of mortgaged premises, is an action for purely equitable relief and, since the Code, must be brought within ten years after the cause of action has accrued.

As a general rule, the right of action accrues upon maturity of the mortgage. The exceptions to this rule stated, and the rights and remedies of mortgagor and mortgagee, at law and in equity, before valid foreclosure fully discussed.

A foreclosure is null and void against the owner of the equity of redemption, not made a party, and no claim of adverse possession can be founded thereon as against him.

In an action to redeem, a demand before suit, accompanied by an offer to pay any balance, which may remain unpaid, is only important in reference to the costs of the action, but not absolutely necessary.

*General Term, November,* 1870.

*Before* BARBOUR, *Ch. J.,* MONELL *and* FREEDMAN, *JJ.*

APPEAL from judgment, dismissing the complaint.

The action was brought to redeem five lots of land in the city of New York, situated on 4th Avenue between 85th and 86th streets, from the lien of a mortgage and to recover possession.

The complaint alleges:

That Isaac M. Woolley, the owner, and his wife made a mortgage upon said premises to Leonard W. Lawrence, November 3d, 1838, to secure $1,000, payable in one year.

Afterwards, May, 16th, 1842, Woolley and wife conveyed the premises, subject to the mortgage, to the plaintiff, Miner, which deed was recorded May 26th, 1842.

Afterwards, November 5th, 1842, Lawrence commenced proceedings to foreclose the mortgage against Woolley and

wife, but did not make the plaintiff, Miner, the then owner of the premises, a party, nor had Miner any notice of the foreclosure.

A decree of foreclosure therein went by default.

On January 19th, 1843, the premises were sold under such decree, and bought in by Lawrence, the mortgagee.

Lawrence received his deed from the master, March 16th, 1843, which is recorded; Lawrence and wife then, March 12, 1867, conveyed to Kendall.

Kendall and wife then conveyed a part of the premises to defendant Beekman, April 1st, 1869, and the rest of the premises to the defendant, Crombie, on the same day, April 1st, 1869.

When Woolley conveyed to the plaintiff, the premises were vacant, uninclosed and unoccupied and were not actually occupied till April 1st, 1869 ; were not susceptible of adverse possession.

Woolley paid the interest on mortgage to Lawrence, to May 1st, 1841. Then avers tender to defendant, Crombie, (and frequent attempts to tender to Beekman), the amount of the mortgage, interest and costs, and demand of possession. Refused.

Judgment asked for accounting as to amount due on mortgage, that plaintiff might redeem, and that *defendants deliver possession*, and for further relief.

Answers are substantially alike.

The only allegations material to consider on this appeal, are these :

They admit the mortgage, and aver that it was recorded November 8th, 1838.

Admit filing bill for foreclosure November 5th, 1842, and aver service of process on Woolley and wife, the filing of *lis pendens ;* decree, December 15th, 1838, (which should be 1842), of foreclosure and sale ; amount then due Lawrence on mortgage $1,012 59, and premises sold under said decree

*Miner agt. Beekman.*

by Mitchell, master, to Lawrence, and deed given and recorded.

Aver that plaintiff had notice of the commencement of the action, and of the sale and deed to Lawrence, and that Lawrence entered into possession under the deed, occupied the premises, and paid taxes from time of receipt of deed to him till he conveyed to Kendall, and then Kendall paid. That defendants caused buildings to be put on the premises.

2d, Defense.—That neither plaintiff nor his ancestors, &c., were seized or possessed of the premises within twenty years before commencement of this action.

3d, Defense.—That defendants and their grantors were seized and possessed of premises *within twenty years* before commencement of this action.

4th, Defense.—That the premises were held and possessed by defendants and their grantors, and in their continued occupation *adversely* to plaintiff, *under said judgment of foreclosure and master's deed*, for more than twenty years before commencement of action.

5th. Defense.—That action was not commenced within ten years after right of action accrued.

Also, that the land was occupied and had inclosure thereon since the conveyance to Lawrence, and for more than twenty years before the commencement of this action.

*Trial.*—On the trial at special term, the plaintiff proved tender to the defendant, Crombie, October 11th, 1869, of the amount due on the mortgage, and that he tried to make the same tender to defendant, Beekman, but could not find her.

Plaintiff then rested.

Defendant introduced no proof but moved for non-suit.

The court granted the motion, on the ground that the cause of action accrued when the mortgage became due, and that the statute of limitations then began to run, and that the right of action was barred by the statute.

J. W. HAWES, *attorney for appellant.*

JOHN E. DEVELIN, and LUTHER R. MARSH, *of counsel.*

F. BYRNE, *attorney for respondent, Beekman.*

R. W. TOWNSEND, *attorney for respondents, Mary Crombie, and others.*

A. R. DYETT, *of counsel.*

*By the court,* FREEDMAN, J.—It is the settled law of this state, that the legal ownership of land mortgaged is not, as in England, vested in the mortgagee, subject to be defeated by the performance of the condition. The mortgage is a mere lien or security for the debt, and not in any sense a title. The debt, in the eye of the law, is the principal, and the landed security merely appurtenant and secondary. (*Kortright* agt. *Cady*, 21 *N. Y.*, 343 ; *Stoddard* agt. *Hart*, 23 *N. Y.*, 556).

A mortgagee cannot, in any way, convey, devise, mortgage or incumber the land, while the mortgagor can do all these things. Judgments against a mortgagee, which are a lien on all legal estates, do not affect his interest in the land mortgaged. Such interest does not descend to his heirs, but goes to his personal representative as a chose in action ; it is not subject to dower or curtesy ; it passes by a parol transfer, and by any transfer of the debt, and finally it is extinguished by payment, or by whatever extinguishes the debt. (3 *Johns. Cas.*, 329 ; 1 *J. R.* 590 ; 4 *J. R.*, 42 ; 7 *J. R.*, 278 ; 15 *J. R.*, 319 ; 6 *J. R.*, 390 ; 2 *Paige*, 68, 586 ; 5 *Wend.*, 603 ; 2 *Barb., Ch.*, 119).

Formerly, it is true, the mortgagee could maintain ejectment against the mortgagor, until the Revised Statutes abolished that remedy in such a case. (2 *R. S.*, 312, § 57 ; 3 *R. S., 5th ed.*, 599, § 50).

But even, that right was in this state, but a right to recover the possession of the property pledged for the purpose of paying the debt. So, the right still existing in a mortgagee in possession, to defend himself against an ejectment by the mortgagor, is but a right to retain the property pledged until

satisfaction of the debt. It is but the incident of the debt, and has no relation to a title or estate in the lands. Such possession (if obtained with the assent of the mortgogor) is a just and lawful possession like the possession of any other pledge, but when its object is accomplished, it is neither just nor lawful for an instant longer. The possessory right instantly ceases, and the title is as before in the mortgagor, without a reconveyance. (21 *N. Y.*, 343, *per* COMSTOCK, *J.*)

But without such assent, the mortgagee cannot take possession. The mortgagor in possession is considered the real or legal as well as the equitable owner of the freehold, and as such is entitled to the possession, and to the rents and profits up to the time the purchaser under a foreclosure becomes entitled to the possession. (*Clason* agt. *Corley*, 5 *Sandf.*, 447).

Indeed, he may maintain trespass against the mortgagee, or a person acting under his license. (*Runyan* agt. *Mersereau*, 11 *John.*, 538).

A mortgagee out of possession can only proceed to foreclose his lien, either by action or under the statute, (2 *R. S.*, 545, *and acts amendatory of the same*), and the mortgagor may redeem the land from the lien of the mortgage even after default in the payment on the day appointed, (18 *Johns.* 110; 26 *Wend.*, 541) ; and tender of the amount due at any time before foreclosure, though made after the law day and not kept good, discharges the lien. (*Korthright* agt. *Cady*, 21 *N. Y.*, 343).

This right to redeem is technically called the equity of redemption, at common law, upon the execution of a mortgage, the legal estate vested in the mortgagee, subject to its being defeated on performance of the condition by the mortgagor. To divest the estate of the mortgagee, it was necessary for the mortgagor to make payment at the day according to the condition of the mortgage. If he failed to do so, the estate became forfeited. This appointed day tor the payment of the money, to secure which the mortgage was given, became

known in legal parlance as the law day. But in the eye of equity, the absolute forfeiture of the estate, whatever might be its value, on the breach of the condition, was regarded as a flagrant injustice and hardship, although perfectly accordant with the system on which the mortgage itself was grounded. The courts of equity, therefore, stepped in to moderate the severity with which the common law followed the breach of the condition. Leaving the forfeiture to its legal consequences, they operated on the conscience of the mortgagee, and acting in *personam*, and not *in rem*, they declared it unreasonable, that he should retain for his own benefit what was intended as a mere pledge; and they adjudged that the breach of the condition was in the nature of a penalty which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal and interest, and costs, notwitstanding the forfeiture at law.

Thence, grew up the system in England of filing bills in equity to redeem, and in this state the filing of bills in equity by the mortgagee to foreclose and cut off this right of redemption of the mortgagor. (21 *N. Y.*, 346, per DAVIES. *J*).

From this it will be seen, that the term "equity of redemption," although still in use, really belongs to a system of law which is entirely different from ours. With us this so-called equity of redemption is deemed to be the real and beneficial estate, tantamount to the fee at law, and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law in the mortgagor, (4 *Kent's Com.* 159).

It is also subject to dower, (2 *Bosw.*, 524; 20 *N. Y.*, 412; S. *C.*, 10 *Abb.* 152).

And under the Revised Statutes vendible as real property on an execution at law, although it cannot be sold under a judgment at law for the mortgage debt. (3 *R. S. 5th ed.*, 649, § 45).

At any time (within the period of limitation hereinafter

mentioned) before the equity of redemption is absolutely barred and foreclosed, the mortgagor is entitled to redeem the mortgaged premises and thus clear them from the incumbrance upon them, and this right extends to his grantees, assignees, heirs, devisees, and every other person who has acquired any interest in, or a legal or equitable lien upon the land, and, therefore, a tenant for life, a tenant by the curtesy, a jointress, a tenant in dower in some cases, a reversioner, a remainderman, a judgment creditor, and every other incumbrancer, unless he be an incumbrancer *pendente lite*, may insist upon a redemption. A wife having an incohate right of dower in the equity of redemption, even where the mortgage is given for a portion of the purchase money, may, on the death of her husband, redeem the premises by payment of the mortgage debt, and a foreclosure of the mortgage in the lifetime of her husband, by a suit, in which she was not a party, will not cut off her right of redemption. (2 *Bosw.*, 524; 20 *N. Y.*, 412, *S. C.*, 10 *Abb.*, 152).

The right to redeem is a right inherent in the land binding all persons coming in under the mortgagor, (1 *Powell on Mort.* 251). It is a valuable right, of which no one can be deprived against his consent, without due process of law, affording to him an opportunity of exercising it, if he deems it advantageous to his own interest. A foreclosure of a mortgage, either by action or under the statute, and the deed executed to the purchaser in pursuance thereof, is, therefore, a bar only between the parties to the action or proceeding. As to any other person having a right to redeem and not made a party, it is a nullity. As against such party, the mortgagee (or purchaser at the sale who succeeds to his right) acquires, upon obtaining possession of the premises in a manner binding upon the owner of the fee, the rights of a mortgagee in possession only, with a mere lien for the mortgage debt, and is liable consequently to account for the profits, (*Brainerd* agt. *Cooper*, 10 *N. Y.*, 356; *Peabody* agt. *Roberts*, 47 *Barb.*, 91; *Winebrener* agt. *Johnson*, 7 *Abb. N. S.*, 202); and such

party is entitled to redeem upon payment of the mortgage debt, principal and interest, without paying the cost of the previous foreclosure. *(Gage* agt. *Brewster,* 31 *N. Y.,* 218).

This rule is adhered to, notwithstanding the fact, that as a general rule, a decree of foreclosure, which is binding upon the owner of the fee, extinguishes the mortgage and that after a sale in pursuance of the decree, neither the mortgage nor the judgment is any longer a lien upon the premises.

But, if the foreclosure be null and void as against the *owner of the fee,* by reason of such owner not having been made a party, the mortgagee (or purchaser at the sale who succeeds to his rights) cannot take possession under the deed founded upon such void foreclosure, except with the assent of such owner. If he enter without such assent, he may be treated as a trespasser, and as such he has not the power to confer, by a subsequent grant in fee of the land itself, upon his grantee the rights of a mortgagee in possession.

From this it follows that *any* mortgagee or person standing in his place, who has obtained the possession of the mortgaged premises either with the assent of the owner of the fee or in any manner which is binding upon such owner, is, as long as the latter's right to redeem exists, but the bailiff of such owner and can do no more than a bailiff or steward. His possession is that of the owner, and consequently, he can acquire no right during that time, founded upon such possession wherewith to commence an adverse possession. *(Chalmers* agt. *Wright,* 5 *Robts.,* 713; 1 *Hilliard on Real Prop.* 4th ed., 587, § 21).

As long as the legal title remains in the owner of the equity of redemption, the occupation of the land by another will be presumed to be under the legal title, and one setting up an adverse title, must, therefore, show that he occupied the premises under a claim of title hostile to such legal title, and exclusive of any other right *(Code,* §§ 81, 82, 84). For these reasons, I cannot perceive how a mortgagee or one standing in his place can, during the existence of the owner's right of

redemption, enter into adverse possession of vacant lots short of an actual, visible and notorious occupation of the lots under claim of having the *entire* title to them, exclusive of any other right. It is not necessary, however, to determine here in what particular manner a mortgagee in possession for more than twenty years, might maintain a claim of adverse possession.

But, although, the right of redemption is held to be an inseparable incident to a mortgage, and in accordance with the maxim, " once a mortgage, always a mortgage," all restrictions or qualifications of this right are deemed utterly void, it may be barred by length of time. The power of enforcing it is an equitable power residing in courts of equity jurisdiction, and is exercised upon equitable principles *(Beach.* agt. *Cooke,* 28 *N. Y.,* 508). In the absence of express statutory provisions to the contrary, the court formerly preserved the analogy between the right in equity to redeem and the right of entry at law, so that the mortgagor, who came to redeem against a mortgagee in possession, after the period of limitation of a writ of entry, had to bring himself within one of the exceptions, which would save the right of entry at law, or the time was considered a bar to the redemption for the reason, that such lapse of time raised a presumption that the right to redeem had been abandoned, and a release of the equity of redemption to the mortgagee executed. Judge STORY, in the second volume of his *Equity Jurisprudence,* *page* 370, § 1028, says : " In respect to the time in which a mortgage is redeemable, it may be remarked, that the ordinary limitation is twenty years from the time when the mortgagee has entered into possession after breach of the condition under his title, by analogy to the ordinary limitation of writs of entry and actions of ejectment..

If, therefore, the mortgagee enters into possession in his character as mortgagee, and by virtue of his mortgage alone, he is for twenty years liable to account, and if payment be tendered to him he is liable to become a trustee of the mort-

gagor, and to be treated as such. But if the mortgagor permits the mortgagee to hold the possession for twenty years withiout accounting, or without admitting that he possessed a mortgage title only, the mortgagor loses his right of redemption and the title of the mortgagee becomes as absolute in equity as it previously was in law. In such a case, the time begins to run against the mortgagor from the moment the mortgagee takes possession in his character as such. And if it has once begun to run, and no subsequent admission is made by the mortgagee, it continues to run against all persons claiming under the mortgagor, whatever may be the disabilities to which they may be subjected." I may remark here, that this rule has been entirely superseded in this state by the provisions of the Code, which prescribe with clearness and precision, not only the manner in which an adverse possession must commence, and the cases in which it may be maintained and defended, but also, the time within which all actions must be commenced.

The first attempt to regulate limitations in equity, which had been adopted by courts of equity, as a rule of decision and as a guide to their discretion, by express enactments was made by the Revised Statutes, the provisions of which, so far as they were not then already in force, severally took effect as laws on the first day of January, 1830, (*See Reviser's Notes in N. Y., Stat. at Large, Edm. ed., vol. 5, 437*). In all cases of concurrent jurisdiction, in the courts of law and of equity, the statute of limitations was declared to apply equally to both courts. But suits over the subject matter of which a court of equity had peculiar and exclusive jurisdiction, and which subject matter was not cognizable in the courts of common law, were excepted therefrom, and in all such cases, the limitation of bills for relief on the ground of fraud, was fixed at six years after the discovery, by the aggrieved party of the facts constituting the fraud, and in all the other cases not specially provided for at ten years after the cause accrued. (2 *Rev. Stat.*, 301, §§ 49-52).

This statute, says Kent in his commentaries, seems to reduce the right to redeem from twenty years, as it before stood, to ten. (4 *Kent's Com.*, 10th ed., 222, * 188).

By the Code, which conferred law and equity jurisdiction upon the same tribunals, *all* provisions contained in the Revised Statutes relating to the time of the commencement of actions, were repealed and those of the Code, (§§ 73 *to* 110), substituted in their stead.

Section 69 of the Code abolishes the distinction between actions at law and suits in equity, and the forms of all such actions and suits in existence before that time, and prescribes "that there shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action."

This section does not abolish the action itself, as a remedy at law, or a suit, as a means of seeking relief in equity, nor does it aim at destroying the substantial differences which always existed between legal and equitable proceedings and remedies. The mere formal differences are abolished, but the principles by which the rights of the parties are to be determined remain unchanged. The Code has given no new cause of action. In some cases parties are allowed to maintain an action who could not have maintained it before; but in no case can such an action be maintained where no action at all could have been maintained before upon the same facts. If, under the former system, a given state of facts would have entitled a party to a decree in equity in his favor, the same state of facts now, in an action prosecuted in the manner prescribed by the Code, will entitle him to judgment to the same effect. If the facts are such that at the common law the party would have been entitled to judgment, he will, by proceeding as the Code requires, obtain the same judgment (*Cole* agt. *Reynolds*, 18 *N. Y.*, 74).

Section 74 of the Code enacts that civil actions can *only* be commenced within the periods prescribed in this title after

the cause of action shall have accrued, except where, in special cases, a different limitation is prescribed by statute, &c.

There being no forfeiture of the mortgaged estate on the law day under our system, an action to redeem mortgaged premises is simply an action for permission to pay the debt, to extinguish the lien, and for such further special relief, including the recovery of the possession, as circumstances may call for.     It is an action for equitable relief, and, in my judgment, comes both within the letter and spirit of section 97, which prescribes that an action for relief not hereinbefore provided for must be commenced within ten years after the cause of action shall have accrued; actions to redeem, are, in that respect, similar to actions for the specific performance of contracts, which must be brought in equity, and for that reason must be commenced within ten years after the cause of action has accrued (*Bruce* agt. *Tilson*, 25 *N. Y.*, 194; *Peabody* agt. *Roberts*, 47 *Barb.*, 102, 103).

It is important, therefore, to ascertain at what particular time a cause of action cognizable in equity may be deemed to accrue.     The rule of courts of equity is, that the cause of action or suit arises when, and as soon as the party has a right to apply to a court of equity for relief (2 *Story Eq. Jurisp.*, § 15, 21, *a*).

The same rule was laid down in *Bruce* agt. *Tilson*, (25 *N. Y.*, 196).   Justice ALLEN, who delivered the leading opinion in that case, demonstrated very clearly, among other things, that a request made by action and an averment of readiness and willingness on the part of the plaintiff to perform, is sufficient, and that a demand upon the defendant before suit brought, accompanied by an offer by plaintiff to perform on his part, is only important in reference to the costs of the action, but has no bearing upon the merits or the rights of the parties.   Costs in equity are always in the discretion of the court; and whether they are granted or withheld, they are but as incidents to and no part of the relief sought.   A

party getting the relief asked may even be compelled to pay costs.

In *Beach* agt. *Cooke* (28 *N. Y.*, 535), Justice SELDEN went still further, and held that under our former system of pleading it was not necessary that a bill to redeem should contain an offer to pay any balance which might be found due, and that such offer is not indispensible now.

In *Oakes* agt. *Howell* (27 *How.*, 145), it was held that an action to reform a sealed contract or instrument in writing for the sale of lands, on the ground of mistake, accident, or inadvertance, there being no fraud, is barred by the ten years' statute of limitations, from the time the cause of action accrued, and that the cause of action accrued immediately after the execution and delivery of the contract, and not upon the discovery of the mistake or accident.

In accordance with these principles decided by these cases, a mortgagor's cause of action and right to redeem must, as a general rule, be deemed to accrue both under the Code and the Revised Statutes, at the time the mortgage becomes due and payable. The rule laid down by Justice STORY (in the second volume of his *Equity Jurisprudence*, p. 370, § 1028) to the effect that the limitation runs from the moment the mortgagee takes possession in his character as such, which was applied by the courts of equity in the absence of a statutory regulation upon the subject, can, therefore, notwithstanding a doubt, has been expressed upon this point in a note by Judge COMSTOCK in his edition of Kent (4 *Kent's Com.*, 11*th* ed., § 213-215, *note* 1), be followed no longer. In *Roberts* agt. *Sykes* (30 *Barb.*, 173), it was held that where stock is pledged as security for the payment of a note, the pledgor's equitable action to redeem the stock accrues or commences when the note becomes due; and if such action be not brought within ten years from that time, it is barred by the statute. As land mortgaged is but a security for the debt due to the mortgagee, or, in other words, a pledge to him to secure the payment of the debt,

there seems to be no good reason why the principles settled in reference to the pledge of personal property should not be applied to the pledge of real estate.

There are decisions which seem to establish as an exception to the general rule, limiting the time to redeem to ten years from the time of the maturity of the mortgage debt, that the right of redemption may be kept alive beyond that period, is revived again by an act of the mortgagee, which amounts to an acknowledgment of the mortgagor's right to redeem, or by special agreement after foreclosure (*Calkins* agt. *Calkins*, 3 *Barb.*, 305; *Affirmed in* 20 *N. Y.*, 147 *sub. nom. Culkins* agt. *Isbell, et al; Borst* agt. *Boyd*, 3 *Sandf., Ch.*, 301; 1 *Hilliard on Real Prop.*, 4 *ed.*, 668, § 9).

But these decisions should be read in connection with § 110 of the Code, which, as amended in 1844, provides:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same be contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." By the concluding sentence, which was not in the original draft of the Code, the effect of partial payments was declared to be the same as before the Code.

Therefore, after making due allowance for the various changes in the law hereinbefore referred to, the present rights of the owner of the equity of redemption against the mortgagee or his assigns, before foreclosure valid in law, may be briefly summed up as follows:

I. WHERE SUCH OWNER IS IN POSSESSION, as the fact usually is in this country, he has a right to redeem for ten years from the time the mortgage became due or the subsequent payment and acceptance of part of the principal or interest. At the expiration of that period neither his title nor his right to pay is lost, for the mortgagee can, under no circumstances, maintain ejectment. The statute simply prevents the court

from granting *affirmative equitable* relief to such owner on *his own* application. It simply bars an equitable remedy, but leaves him free to pursue others. He is still at liberty either to tender the amount due, with interest, and thus discharge the lien by his own act without the aid of a judicial sentence, or to delay payment until the mortgagee, who cannot maintain ejectment, sees fit to institute, either by action or advertisement under a power, proceedings to foreclose. This, the latter must do, within twenty years after the debt is due or its existence has been acknowledged by an act, sufficient in law, of the owner. As the owner in the meantime has the full enjoyment of the property, and the rents and profits of the same, he cannot suffer any loss.

II. Where the mortgagee, or one standing in his place, has acquired possession of the mortgaged premises wrongfully, or in a manner not binding upon the owner of the equity of redemption, no bill to redeem is necessary to recover the possession, but such owner may pursue his legal remedy.

III. When the mortgagee, or one standing in his place, has acquired the possession with the assent of the owner of the fee, or in any other manner which is binding upon such owner, and the land yields no income, the right of redemption by an action brought for that purpose, expires absolutely (unless extended, kept alive or revived by an acknowldgement of such right sufficient in law on the part of the mortgagee), at the end of ten years from the maturity of the mortgage debt, or subsequent payment and unconditional acceptance of part of the principal or interest.

But if the mortgagee derive income from the land, the owner may bring his action to redeem, and for an accounting within ten years from the time of the receipt by the mortgagee of the last item.

After the right of redemption by action has been barred, the owner is still at liberty, in every case, to tender the amount due upon the mortgage, with interest, to thus discharge

the lien, to demand possession, and, upon the mortgagee's refusal, to bring an action at law for the recovery of the possession of the premises thus freed from the lien. This is a *legal* right which accrues upon the mortgagee's wrongful refusal, and such action, it seems to me, can be resisted by the mortgagee only by strict proof of adverse possession under claim of title for more than twenty years.

· Indeed, I am not quite sure, whether the owner may not, under our system, maintain an action to recover the possession, without a previous tender, upon proper allegations and affirmative proof of the actual extinguishment of the mortgagee's debt by the receipt of rents and profits, demand of possession based thereon, and made before the acquirement by the mortgagee of title by adverse possession, and the mortgagee's refusal to deliver. At any rate, I am not prepared, without further investigation, to deny the owner's right so to do.

It may appear strange, that the mortgagee should have twenty years from the maturity of the debt, and after any acknowledgment of its existence, within which to foreclose his mortgage, and that the owner of the equity of redemption should be confined to ten years, within which to commence his equitable action to redeem, and for an accounting. It should be considered, however, that the action for redemption and an accounting rests purely upon equitable principles, and that consequently, neither tender of amount due nor demand of possession before suit, is absolutely necessary; while the action to foreclose is brought upon an instrument under seal created by the act of the mortgagor, which acknowledges the existence of the *legal* debt to secure which the mortgage is given. By reason of the seal the debt is not presumed to have been paid until the expiration of twenty years after it becomes due, and payable, and by the express terms of the Code, an action founded upon an instrument under seal, may be brought within twenty years. At any rate, the responsibility therefor is with the legislature, which enacted the

statute, while it is the duty of the courts to enforce it, not to evade it.

The case of the *National Fire Ins. Co.* agt. *McKay*, (5 *Abb. N.S.*, 445), cited by the appellant's counsel, is in entire harmony with the views expressed by me. The action was ejectment. Plaintiffs claimed possession against defendant under title acquired by deed upon sale under decree of foreclosure entered in February, 1842. Defendant had succeeded to the rights of the owner of the equity of redemption by assignment from one Burdell, who had acquired title by deed from the owner, before foreclosure. Burdell was not made a party to the action of foreclosure. It was held, that when the owner of the fee has been foreclosed by judicial proceedings, the remedy of an incumbrancer junior to the mortgage, who was not a party to the action or proceeding, and who has not been cut off, is possibly by action to redeem, which action *must* be brought within the time specified in the 52d section of the Revised Statutes (ten years). But the remedy of the owner of the fee, who has not been made a party, is not confined to a bill in equity to redeem. He has a concurrent remedy at law; he may tender the amount due upon the mortgage, and bring ejectment at any time before twenty years adverse possession has run against him. And for the last named reason the court held, further, that the defendant, being in possession with the rights of such owner, was not estopped, although his right to redeem was barred, from defending *his* possession by setting up the Burdell title against the plaintiffs who, as against him, had acquired only the rights of mortgagees, and by reason of that fact, could not maintain the action in the face of the statute, which had abolished the right to bring ejectment in such case. I may add, that this decision was concurred in by the learned judge whose ruling, at the trial, was thereby reversed.

This brief review of the course of decisions in this state, and of the changes made in the law, renders it entirely clear that the plaintiff in the case at bar, is not entitled to the

equitable relief prayed for upon the case made out. And this is so, notwithstanding the fact, which must be conceded, that the foreclosure and sale in 1843, is utterly void as against him. The mortgage, by its terms, was payable, November 3, 1839. It is admitted by the pleadings, that interest was paid, and unconditionally received thereon up to May 1, 1841. The premises were vacant lots of which plaintiff was seized at that time, and although the defendants, by answer, set up the title by adverse possession for more than twenty years, and actual occupation and improvement of the premises since the purchase of them, plaintiff gave no proof as to when, how, or in what manner the mortgagee through whom defendants acquired their whole title, acquired possession, or whether or not the mortgagee derived any profit therefrom. It does not appear, that plaintiff's right of redemption was ever acknowledged, after the attempted foreclosure, in any way, and the only circumstance, which does appear, and may be held to have the effect of preventing the statute of limitations from running from the time of the maturity of the mortgage debt, is the payment and unconditional receipt of interest up to May 1, 1841. The right to redeem, therefore, dates from that day, and became barred on the first of May, 1851. The plaintiff, on the other hand, seems to rely wholly and exclusively upon a tender made by him, October 16th, 1869, coupled with a demand of possession. As at that time more than twenty years had elapsed after the cause of action had accrued, it is wholly insufficient, even if the defendants could be regarded as having acquired the rights of mortgagees in possession, of which there is no proof. Such insufficiency will still more clearly appear when it is kept in mind, that in an action to redeem, and for an accounting neither tender nor demand of possession before suit is absolutely necessary. But even if that were necessary, the plaintiff could not, by his own act, review a right barred by the statute. That the complaint was properly dismissed, notwithstanding the reason assigned for the dismissal was

Miner agt. Beekman.

somewhat inaccurate, is, therefore, but the logical result of the legal premises herein stated.

The judgment should be affirmed, with costs, and the plaintiff left to seek his remedy, if he have any left, in an action at law.

MONELL, J., concurred in the foregoing opinion.

BARBOUR, Ch. J., concurred in the result, but upon other grounds.